UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM KELSEY, Jr.,

        Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                              18-CV-6522S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff William Kelsey, Jr., brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application with the Social Security Administration on June 22, 2015. Plaintiff alleged disability beginning on April 22, 2015, due to three heel surgeries and one wrist surgery. (R.[1] at 46, 190.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On January 17, 2017, ALJ Roxanne Fuller held a hearing at which Plaintiff, represented by his attorney, appeared and testified. (R. at 11-21.) Vocational Expert William Cody also appeared and testified by telephone. At the time of the hearing, Plaintiff was 41 years old, with a twelfth-grade education and prior work experience as a carpenter, food preparer, laundry machine operator, receptionist/dishwasher, and roofer. (R. at 36, 191.)

---

[1] Citations to the underlying administrative record are designated as "R."

3. The ALJ considered the case *de novo* and, on May 15, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 11-21.) On May 14, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on July 13, 2018, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 13.) Plaintiff filed a response on June 14, 2019 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's May 15, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

3

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 22, 2015, the alleged onset date. (R. at 13.) At step two, the ALJ found that Plaintiff has the severe impairments of degenerative joint disease of the right foot, right foot fracture, and left wrist fracture. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals

4

any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Id.

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff can "occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; can frequently handle objects, that is gross manipulation with the left non-dominant hand; can frequently finger, that is fine manipulation with the left, non-dominant hand; and is limited to only occasional exposure to extreme cold." (R. at 14.)

12. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 19.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 20.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 21.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ improperly evaluated the opinion of treating physician Dr. John Paul Ketz, (2) the ALJ improperly based her RFC assessment on her own lay opinion, and (3) the ALJ's credibility assessment was not supported by substantial evidence. (Docket No. 9-1 at 10, 13, 17.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

14. Plaintiff first argues that the ALJ erred in giving "little weight" to the opinion of Dr. Ketz. Defendant argues that the ALJ properly evaluated the opinion and gave good reasons for giving it little weight. Plaintiff's argument fails.

15. The ALJ is required to consider "every medical opinion" received. 20 C.F.R. § 416.927(c). A treating physician's opinion is entitled to controlling weight in cases where

5

that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d). When a treating physician's opinion is not consistent with the rest of the record, it does not sustain controlling weight. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

16. If an ALJ does not give controlling weight to a treating physician's opinion, he or she must consider various factors in determining the weight to give it: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c); accord Halloran v. Barnhart, 362 F.3d at 32. The ALJ must "always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503–504 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

17. Dr. Ketz treated Plaintiff from January 2015, when Plaintiff experienced increased pain in his right heel, up to his December 5, 2016, opinion. (R. at 297, 248, 253-60, 264, 337, 342, 392, 393, 394, 406). Dr. Ketz's clinical notes indicate that Plaintiff healed well after his revision surgery on April 22, 2015. On October 23, 2015, Dr. Ketz noted that Plaintiff was in no acute distress and had no evidence of instability, but that he had no motion at the subtalar joint and some stiffness at his ankle joint. (R. at 393.) Dr. Ketz considered Plaintiff "well-healed," and noted that some of Plaintiff's residual symptoms were still "neuritic-based pain from his initial injury." Id. On April 11, 2016, Dr.

Ketz noted improvement in Plaintiff's foot since his surgery. Plaintiff reported that he had noted improvement in his foot since his surgery, though he still had pain and difficulty in prolonged standing and walking. (R. at 394.) On that date, Dr. Ketz considered Plaintiff well-healed, but told him that he would likely have some long-term symptoms. Id. Dr. Ketz encouraged Plaintiff to follow up every year to 2 years. Id.

18.   The overall record also shows the improvement Plaintiff experienced after his 2015 revision surgery. On May 8, 2015, he was "progressing well postoperatively." (R. at 264.) On August 6, 2015, Physical Therapist John Salvas noted that Plaintiff had a pain score of zero, and that Plaintiff reported a significant improvement in symptoms, with pain only when walking on uneven surfaces. (R. at 344.) On August 26, 2015, PA Jordan Smith wrote that Plaintiff seemed to be doing well, and could return to a "sit down type job," with some kind of limitation on walking or standing. (R. at 345.) On June 24, 2016, Dr. Anthony Leone performed an orthopedic medical examination. (R. at 389-404.) He observed that Plaintiff stated he was "fine most of the time," but at times could not get up and walk, and that walking or stepping the wrong way could make the pain worse. (R. at 399.) Plaintiff could lift 50-60 lbs. (R. at 398-99.) Plaintiff was not undergoing further treatment for his heel. Id. Dr. Leone observed that Plaintiff walked with a normal gait and could walk on his toes and heels. (R. at 403.) At the hearing on January 17, 2017, Plaintiff testified that did not take any medication, even the over-the-counter medications his doctor suggested for his pain. (R. at 40.)

19.   Dr. Ketz's medical source statement of December 5, 2016 is not consistent with these records. (R. at 406.) On the form, Dr. Ketz indicated that Plaintiff could only perform "low stress jobs," but his treatment notes do not report any conversations about

7

stress or psychological issues. He stated that Plaintiff needed to walk for 10 minutes every 45 minutes out of a workday, and that he would need daily unscheduled breaks, yet his notes lack any indication that Plaintiff had problems sitting for extended periods. (R. at 407.) Most significantly, Dr. Ketz checked a box stating that Plaintiff would need to be absent from work about 4 days per month, as a result of his impairments. (R. at 408.) Yet both Dr. Ketz's notes and the record as a whole indicate improvement and a reduction in pain in the year after Plaintiff's surgery. Dr. Ketz thought that follow-up appointments only every 1-2 years were appropriate, indicating that Plaintiff's symptoms were not urgent in nature.

20. The ALJ found Dr. Ketz's opinion to be unsupported by the medical record as a whole and inconsistent with his own clinical observations. (R. at 18.) The ALJ was therefore justified in not according the opinion controlling weight. The ALJ also properly considered the statutory factors in deciding the weight to assign Dr. Ketz's opinion; because she found it inconsistent with the record, she properly gave it little weight. See 20 C.F.R. § 404.1527(c). She also properly explained her reasons for doing so. This Court finds that the ALJ did not err in the weight she gave to Dr. Ketz's opinion. (See R. at 18.)

21. Plaintiff next argues that the ALJ improperly relied on her own lay opinion, instead of medical opinions, in making her RFC determination. Defendant argues that the ALJ properly considered all the evidence before her in reaching her RFC determination. Plaintiff's argument fails here, as well.

22. An ALJ is responsible for determining a claimant's RFC. See 20 C.F.R. § 404.1527(d)(2). In doing so, the ALJ must consider all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). The law provides that an ALJ is

8

permitted to assess RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order). The Plaintiff has the burden of proving that he or she is disabled, and of furnishing evidence of his or her disability. See 20 C.F.R. § 404.1512(a); 42 U.S.C. § 423(d)(5)(A). It is within the ALJ's discretion to resolve genuine conflicts in the evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). An ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources, because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

23. Here, the ALJ considered an abundant record, and the record supports her RFC determination. The ALJ resolved conflicts in the medical evidence, weighing Dr. Ketz's opinion, as discussed above, against numerous other medical records indicating Plaintiff's improvement. Dr. Ketz's own treatment notes showed Plaintiff's post-surgery improvement, as did other medical records. The ALJ properly considered the totality of the evidence in reaching her RFC determination.

24. Finally, Plaintiff argues that the ALJ's assessment of his credibility was not supported by substantial evidence. Defendant argues that the ALJ properly assessed Plaintiff's credibility. Again, Plaintiff's argument is unavailing.

25. In assessing a claimant's testimony about his symptoms, the ALJ must first "consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by claimant." 20 C.F.R. § 404.1529. The ALJ must then assess the credibility of the claimant's testimony based on: (i) the individual's daily activities; (ii) the location, duration, frequency, and intensity of

the individual's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) any other measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. 404.1529(c)(3)(i)-(vii).

26. Here, the ALJ found that Plaintiff's foot injuries could reasonably be expected to produce pain. (R. at 15.) The ALJ found, however, that "the medical evidence does not support the claimant's own subjective allegations of pain and limitations." (R. at 19.) The ALJ noted that Plaintiff told Dr. Leone that he was "fine most of the time." (R. at 399). Plaintiff testified that he did not take any medication, not even over-the-counter Tylenol. (R. at 40.) The ALJ noted that Plaintiff was treated only conservatively for his foot issues after his April 2015 surgery. (R. at 18.) She noted his ability to care for his children, at least to some extent. (R. at 19.) Daily activities, medication taken to alleviate pain, and other measures to relieve pain are factors specified in the regulations, and the ALJ properly considered them in assessing Plaintiff's credibility.

27. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      January 6, 2020
              Buffalo, New York


<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge